# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**ASPLUNDH TREE EXPERT COMPANY,**
**Employer Below, Petitioner**

**FILED**

May 29, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 18-0217** (BOR Appeal No. 2052158)
                    (Claim No. 2016016569)

**JOHN LAFON,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Asplundh Tree Expert Company, by Melissa M. Robinson, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. John Lafon, by Gregory S. Prudich, his attorney, filed a timely response.

The issue on appeal is whether or not Mr. Lafon's claim was timely filed. The claims administrator rejected the claim for workers' compensation benefits in an Order dated January 13, 2016. The Workers' Compensation Office of Judges affirmed the claims administrator's Order on August 17, 2017. This appeal arises from the Board of Review's Order dated February 2, 2018, in which the Board reversed and vacated the Order of the Workers' Compensation Office of Judges. The Board of Review modified the date of injury in the claim to be May 26, 2015, and the claim was found to be timely filed. The Board of Review remanded the case to the claims administrator with instructions to issue a protestable order on the merits of the compensability of the claim with a date of injury of May 26, 2015. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Lafon, a groundsman for the Asplundh Tree Expert Company, injured his left knee on May 26, 2015. Following the injury, Harold Bailey, the immediate supervisor, accompanied

1

Mr. Lafon to MedExpress in Bluefield, Virginia. Mr. Lafon was treated by Stephen Sylvester, PAC, who reviewed x-rays and concluded that he suffered a knee sprain. Harold Bailey paid for the medical services under Asplundh's "first aid" process, and no workers' compensation claim was filed.

Mr. Lafon continued treatment with MedExpress from May 26, 2015, through November 27, 2015. On June 12, 2015, he was seen by Philip Roberts, M.D., for a follow-up evaluation. Mr. Lafon reported that his knee felt unstable when walking. The assessment was sprain/strain of the left knee/lower leg. Mr. Lafon once again reported to MedExpress on July 14, 2015, where he was seen by Denise Clay, M.D., for his continued knee pain. After examination, Dr. Clay referred Mr. Lafon for an orthopedic evaluation.

Mr. Lafon was evaluated by orthopedic surgeon Walid H. Azzo, M.D., on August 20, 2015. Mr. Lafon reported to the evaluation with a complaint that his left knee was locking up while walking and participating in physical activities. Mr. Lafon reported that the left knee symptoms started on May 26, 2015, the day he suffered his injury. The diagnosis was medial meniscal tear and possible tear of the knee cruciate ligament. Dr. Azzo recommended that Mr. Lafon undergo an MRI of the left knee to rule out an anterior cruciate ligament tear. Once again, Howard Bailey accompanied Mr. Lafon to his medical evaluation. Mr. Bailey, again, paid the medical bill using Asplundh's "first aid" plan.

In a witness statement dated August 21, 2015, Ernest Winterford stated that on the day that Mr. Lafon fell, he was trimming trees two spans away when he received a call from Travis Brown saying that Mr. Lafon had injured his knee. Mr. Winterford notified the general foreman because Mr. Lafon eventually believed that he should seek medical attention. The general foreman advised Mr. Winterford to document everything with photos.

Travis Lee Brown also provided a witness statement dated August 21, 2015. Mr. Brown stated that he witnessed Mr. Lafon injure his knee while working. Mr. Lafon was flushing a stob, and then Mr. Brown heard Mr. Lafon crying because he had injured his knee. Mr. Brown called the foreman to inform him of Mr. Lafon's injury. They helped him off of the hill. Mr. Brown also stated that the general foreman took Mr. Lafon to seek medical attention.

Tyler Steven McHale also was a witness following Mr. Lafon's injury on May 26, 2015, and submitted a witness statement dated August 21, 2015. Mr. McHale stated that he was a witness to Mr. Lafon's condition after the incident. Mr. McHale stated that while stumping with one knee on the ground, Mr. Lafon sought better footing. Upon lifting his knee from the ground, he was injured. Mr. McHale stated that Mr. Lafon was on the crew for a time because of previous light duty work. Mr. McHale opined that he believed Mr. Lafon did not want to perform the work.

Mr. Lafon continued to have complaints in his left knee, including instability, swelling, pain, and clicking and popping in his knee. He continued to work under his limitations until November 18, 2015, when he was seen at MedExpress by Kristen Youther, FNP-BC, for increased symptoms of his left knee pain. A Medical Excuse Form was provided dated

2

November 18, 2015, stating that he may return to work on January 19, 2016, with restrictions of light duty work with minimal walking for one week. On November 19, 2015, Mr. Lafon filed an application for benefits, alleging that a left knee injury had occurred on November 18, 2015.

In an Order dated January 13, 2016, the claims administrator denied the application for benefits dated November 19, 2015. The Order stated that the decision was based on the fact that the actual date of injury was May 26, 2015, and the medical documentation submitted was to support a May 26, 2015, date of injury. The claims administrator concluded that the claim was submitted outside the six-month window to file a claim in West Virginia. Mr. Lafon protested the claims administrator's decision.

Mr. Lafon testified at a deposition on June 17, 2016. He testified that he was an employee of Asplundh Tree Company for two years as a trimmer, and he worked a traffic truck with American Electric Power. In the course of doing his work, he was required to get out into the terrain and work up and down hills. On May 26, 2015, he bent down in a weird angle and when he stood up, his knee locked. When he realized he hurt himself, he asked for help from his co-workers. His foreman, Shawn Booth, provided assistance in trying to get to his truck. Mr. Lafon testified that he could barely make it due to the terrain. Mr. Booth called Howard Bailey, their boss. Mr. Bailey came to the site and drove Mr. Lafon to MedExpress in Bluefield, Virginia. Mr. Lafon testified that Mr. Bailey paid for the necessary medical services. Mr. Lafon testified that he did not file a workers' compensation claim that day because Mr. Bailey pretty much talked him out of it. According to Mr. Lafon's testimony, Mr. Bailey told him that the company would take care of it, and it was part of the company's "first aid" plan. Mr. Lafon had x-rays and was referred to an orthopedic surgeon. He returned to work but continued to have difficulties with his knee injury.

During his deposition, Mr. Lafon testified that he never had any left knee problems prior to his May 26, 2015, injury. Following the injury of May 26, 2015, he continued to have complaints of pain in his left knee, instability, swelling, and a clicking sensation in his knee. He was placed on light duty due to the injury. Mr. Lafon stated that he went back to MedExpress on November 18, 2015, because he reinjured his knee when he awkwardly stepped on a slight incline while getting out of his truck. He stated that he thought it was a continuation of his left knee condition. He filed a workers' compensation claim on November 19, 2015, and listed the date of injury as November 18, 2015. MedExpress assisted in completing the application.

Lawrence Kirk, a Regional Vice President for Asplundh Tree Expert Company, testified at a deposition held on February 8, 2017. Mr. Kirk testified that when a workplace injury occurs, the employee is to contact his general foreperson, and then the general foreperson will contact the supervisor and/or utility forester. The general foreman will either report it to the carrier or a workers' compensation claim form would be given to the employee. If there was a physical injury, the employee would be taken to either a hospital or clinic. Then, a determination would be made as to whether the employer has to file a claim or not. Mr. Kirk stated that if Asplundh is aware of an injury, they report it to HealthSmart, their claims administrator. If the employee has a minor injury and is released to duty with a one-time treatment, then the situation would be treated as "first aid." The supervisor would be authorized to pay the medical bill for a one-time

visit. If the employee needed additional treatment, a report would be completed and submitted to the claims administrator. Mr. Kirk stated that when pursuing treatment through the "first aid" process, the third-party administrator is not involved. The third-party administrator would not be made aware of an injury until an actual claim was filed.

The Office of Judges affirmed the claims administrator's rejection of Mr. Lafon's claim in a Final Order dated August 17, 2017. The Office of Judges noted that the claims administrator denied the claim because the actual date of injury was May 26, 2015, which was supported by medical documentation. However, the claim was filed outside the six-month window to file a workers' compensation claim in West Virginia. Under West Virginia Code § 23-4-15(a) (2010), an application for benefits must be filed with six months from and after the injury. The Office of Judges reasoned that there was only one claim for benefits filed by Mr. Lafon, with a reported date of injury of November 18, 2015. The evidence supporting the claim indicated that Mr. Lafon actually injured his knee on May 26, 2015. Then, a subsequent event occurred on November 18, 2015. Because the original injury occurred on May 26, 2015, it was reasoned that Mr. Lafon had until November 26, 2015, to file a timely claim for workers' compensation benefits. The Office of Judges concluded that the claim was not filed within the required statutory period and held that the claims administrator did not err in rejecting Mr. Lafon's claim for benefits.

In its Order dated February 2, 2018, the Board of Review found that the conclusions within the Final Order of the Office of Judges was affected by error of law and clearly wrong in view of the reliable, probative, and substantial evidence on the whole record. After considering the evidence, the Board of Review concluded that the date of injury for the claim should be modified to May 26, 2015. The Board then concluded that the evidence of record supports a conclusion that Mr. Lafon timely filed his application for benefits. The Board noted that the record reflects that Mr. Lafon's boss took him to MedExpress on the date of injury and paid the bill. According to Mr. Lafon's testimony, his boss essentially talked him out of filing a worker's compensation claim that day. The Board found that Asplundh Tree Expert Company was made aware of Mr. Lafon's injury claim within the six-month statutory period allowed for filing a claim under West Virginia Code § 23-4-15(a).

After review, we agree with the conclusions and reasoning of the Board of Review. The medical record in this appeal demonstrates that the self-insured employer had actual knowledge of Mr. Lafon's injury and the information necessary to proceed with a workers' compensation claim. The Board of Review did not err in modifying Mr. Lafon's date of injury to be May 26, 2015, and reversing and vacating the August 17, 2017, Order of the Office of Judges.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: May 29, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker